# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| United States of America<br>v.<br><br>ELMER JOSEPH AGUILAR<br><br><br><br>*Defendant(s)* | )<br>)<br>) Case No. 3:25-mj-00200<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 15, 2025__ in the county of __Multnomah and elsewhere__ in the
_____ District of __Oregon and elsewhere__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), )(b)(1)(A)(vi) and 846 | Possession with intent to distribute 400 or more grams of a substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl) a Schedule II Controlled Substance, and Conspiracy to distribute controlled substances. |

This criminal complaint is based on these facts:
See attached affidavit of DEA Special Agent Corey Shannahan

☑ Continued on the attached sheet.

/s/ By Phone
*Complainant's signature*

COREY SHANNAHAN, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 4:50 p.m.

Date: July 16, 2025

*Judge's signature*

City and state: Portland, Oregon　　JEFFREY ARMISTEAD, U.S. MAGISTRATE JUDGE
*Printed name and title*

3:25-mj-00200

DISTRICT OF OREGON, ss:            AFFIDAVIT OF COREY SHANNAHAN

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Corey Shannahan being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been employed as a Special Agent by the Drug Enforcement Administration (DEA) since January of 2022. My current assignment is at the Portland District Office where I am assigned to a DEA federal task force. My formal education includes a Bachelor of Arts in Finance. My formal law enforcement training includes successfully completing the 17-week DEA basic training course at the DEA academy in Quantico, Virginia, followed by 16 weeks of DEA field training in Portland, Oregon. During my field training, I participated in multiple drug investigations involving controlled purchase operations, interdiction, vehicle tracking, cell phone geo-location techniques, pen register/trap and trace orders, and Title III wiretaps. I have interviewed and operated informants, executed search warrants, arrested and interviewed subjects involved in the smuggling and distribution of narcotics, conducted physical surveillance, and utilized electronic and video surveillance. Prior to becoming a Special Agent, I investigated tax evasion and financial fraud for eight years while employed as a Revenue Agent for the Washington State Department of Revenue. I have also worked with and consulted numerous agents and law enforcement officers who have investigated drug trafficking offenses. As a Special Agent, I have participated in multiple drug investigations as either a case agent or as a supporting investigative agent, including in Title III wiretap

**Affidavit of Special Agent Corey Shannahan**                                                                Page 1

investigations. I am familiar with investigations of Drug Trafficking Organizations (hereinafter, "DTOs"), including identifying methods of importation and distribution of controlled substances, and how controlled substances are manufactured, consumed, packaged, marketed, smuggled, and distributed. I am also familiar with various tactics used by DTOs to import drugs into the United States, communicate with members of the DTOs, and arrange for transportation and distribution of drugs.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for: **ELMER JOSEPH AGUILAR ("AGUILAR")** (for committing the offense of possession with intent to distribute 400 grams or more of a substance containing a detectable amount of fentanyl, and conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846.

3. This affidavit is intended only to show that there is sufficient probable cause for the requested arrest warrant and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

### Applicable Law

4. Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), and 846 make it illegal to possess with the intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1- (2-phenylethyl)-4-piperidinyl] propenamide (fentanyl) and to conspire to do so.

**Affidavit of Special Agent Corey Shannahan**                                                                 Page 2

**Statement of Probable Cause**

*Background of the Investigation*

5.     Agents and officers comprising a multiagency narcotics task force assigned to the Drug Enforcement Administration ("DEA") led federal task force D-51, (hereinafter collectively referred to as "Investigators") are investigating a Drug Trafficking Organization ("DTO") with cells operating in Mexico, Honduras, and multiple U.S. states. The multi-cell organization is involved in the importation, transportation, and wholesale distribution of sizeable quantities of methamphetamine, heroin, cocaine, fentanyl, as well as associated money laundering and bulk cash smuggling activities.

*Sources of Information*

6.     ████████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████
████████████████████████████████
████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████

7. █████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████

8. ████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████ g in June 2025, █████ agreed to sell CS-1 a distributable amount of methamphetamine via a local drug trafficker.

9.       Prior to the deal, Investigators met with CS-1 at a nearby neutral location where they searched CS-1's person and vehicle for drugs, weapons, bulk cash, and other contraband. After finding no such items, Investigators provided CS-1 with sufficient U.S. currency to pay for the methamphetamine and outfitted CS-1 with an audio recording device. Investigators then followed CS-1 from the neutral location to the prearranged deal location. Simultaneously, other Investigators established surveillance of the prearranged deal location in anticipation of the drug deal.

10.      A few minutes after CS-1 arrived at the deal location, Investigators observed a young Hispanic male late identified as **AGUILAR** in a white shirt approach CS-1's vehicle and get into the passenger side door of CS-1's vehicle while holding a brown paper bag in his hand.

**Affidavit of Special Agent Corey Shannahan**                                                              Page 4

After a brief stay, Investigators observed Aguilar get out of CS-1's vehicle without the brown paper bag and walk back to a grey/green Ford Escape bearing Oregon license plate 315HYH.

### *July 2025:* ▓▓▓ *Dispatches AGUILAR to Deliver Fentanyl Pills to CS-1*

11.    Over the days leading up to and on July 15, 2025, ▓▓▓ offered to sell CS-1 several thousand fentanyl pills and CS-1 agreed to a deal for 10,000 fentanyl pills later that day. While negotiating the terms of the deal, ▓▓▓ said the drug courier would be driving a green Ford Escape to the deal.

12.    Prior to the deal, Investigators met with CS-1 at a nearby neutral location where they searched CS-1's person and vehicle for drugs, weapons, bulk cash, and other contraband. After finding no such items, Investigators provided CS-1 with counterfeit U.S. currency to pay for the methamphetamine and outfitted CS-1 with an audio recording device. Investigators then followed CS-1 from the neutral location to the prearranged deal location. Simultaneously, other Investigators established surveillance of the prearranged deal location in anticipation of the drug deal.

13.    A few minutes prior to the agreed upon meeting time, Investigators observed the same grey/green Ford Escape bearing Oregon license plate 315HYH arrive and park at a street located a couple blocks away from the deal location. Shortly after arriving, Investigators observed **AGUILAR** walking away from where the Ford Escape was parked and approach CS-1's vehicle. Investigators then observed **AGUILAR** get into CS-1's car. At this time, the audio recording device captured conversation indicative of a drug deal between **AGUILAR** and CS-1. After a few minutes, CS-1 retrieved the counterfeit money from a specific compartment in CS-1's vehicle where Investigators knew the currency to be located and handed it to **AGUILAR**.

14.     After completing the deal, **AGUILAR** travelled back towards the Ford Escape and entered the driver's seat. Moments later, **AGUILAR** drove the Ford Escape away, travelling for a few city blocks. At this time, Investigators positioned their unmarked cars in front of and behind of the Ford Escape. Moments later, Investigators activated the emergency lights and conducted a vehicle stop of the Ford Escape. Investigators approached the Ford Escape while wearing tactical gear and badges clearly labelling themselves as police. Investigators issued verbal commands in both English and Spanish for **AGUILAR** to stop the car and detained **AGUILAR** without incident. At the time Investigators detained **AGUILAR**, Investigators observed **AGUILAR** holding a phone that displayed a live call with a phone number used by ▉▉▉▉.

15.     Following the vehicle stop, Investigators provided **AGUILAR** with his Miranda rights in Spanish from a DEA advice of rights card. **AGUILAR** consented to Investigators searching the Ford Escape where Investigators found several photo identity cards of **AGUILAR**, including an Oregon drivers license, Washington drivers license, and health insurance card.

16.     Meanwhile, other Investigators followed CS-1 from the deal location to a nearby parking lot where they searched CS-1's person and vehicle. Inside of CS-1's vehicle, Investigators observed a red cloth shopping bag containing a clear resealable plastic bag with several thousand small blue pills. Investigators displayed a photograph of **AGUILAR** to CS-1 and CS-1 confirmed **AGUILAR** was the individual who delivered the red cloth bag to CS-1. Below are images of the drugs **AGUILAR** distributed to CS-1:

///

///

**Affidavit of Special Agent Corey Shannahan**                                                                 Page 6

 

Pictured left to right: fentanyl pills AGUILAR delivered, weight and field test results

17.  Following the vehicle stop, Investigators attempted to interview **AGUILAR**; however, **AGUILAR** declined to answer Investigators' questions because he feared for his family's personal safety if he were to discuss anything related to drug trafficking with Investigators. Investigators processed the small blue pills that **AGUILAR** delivered to CS-1 and field narcotics tests returned a presumptive positive for the presence of fentanyl. The total weight, including packaging, was found to be 1,183.6 grams.

## Conclusion

18.  I believe that **AGUILAR** both possessed with intent to distribute over 1,100 grams of fentanyl in Oregon, prior to his arrest by Investigators. Therefore, I believe that **AGUILAR** has committed violations of the Target Offenses.

19.  Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Paul Maloney, and AUSA Maloney advised me that in his opinion the affidavit and complaint are

legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrants for both **AGUILAR**.

### Request for Sealing

20.  It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time is likely to seriously jeopardize the ongoing investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

*/s/ Sworn to by telephone*
*In accordance with Fed. R. Crim. P. 4.1*

Corey Shannahan
DEA Special Agent

Sworn to by telephone at <u>4:50 p.m.</u> p.m. this 16th day of July 2025 in accordance with Fed. R. Crim. P. 4.1.

_____
HONORABLE JEFFREY ARMISTEAD
United States Magistrate Judge

**Affidavit of Special Agent Corey Shannahan**                                                                 Page 8